DAVID B. MILLER *vs.* BOARD OF REGENTS OF HIGHER
EDUCATION & another.[1]

Suffolk. May 4, 1989. — August 2, 1989.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Contract*, Collective bargaining contract. *Labor*, Grievance procedure. *Arbitration*, Parties. *Practice, Civil*, Standing.

A State college faculty member who was denied tenure lacked standing to
bring an action in the Superior Court to vacate a decision in an arbitration
proceeding under the applicable collective bargaining agreement, in-
itiated on his behalf by the Massachusetts Teachers Association against
the Board of Regents of Higher Education, where the faculty member
was not a "party" to the agreement within the meaning of the governing
statute, G. L. c. 150C. [479-480]

CIVIL ACTION commenced in the Superior Court Department
on March 12, 1986.

The case was heard by *William W. Simons*, J., on motions
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Janice Healy* for the plaintiff.

*Mark Peters* for the Board of Regents of Higher Education.

*Americo A. Salini, Jr.*, for Massachusetts Teachers Associ-
ation.

O'CONNOR, J. The defendant Board of Regents of Higher
Education (board) has administrative responsibilities with re-
spect to Massachusetts public institutions of higher education
including Westfield State College and the University of Mas-
sachusetts. The board's duties include appointing, promoting,
granting tenure to, and dismissing personnel. The defendant
Massachusetts Teachers Association (MTA) is the exclusive

---

[1] Massachusetts Teachers Association.

representative of all faculty at State colleges for purposes of collective bargaining. The plaintiff was on the faculty at Westfield State College and belonged to the bargaining unit represented by the MTA. He was denied tenure during the 1982-1983 academic year. As a result, by actions we describe below, he sought to invoke the grievance procedure provided by the collective bargaining agreement then in effect.

The plaintiff's grievance ultimately went to arbitration. The arbitrator found as follows: On May 19, 1983, the special committee on tenure for the plaintiff voted against recommending him for tenure. The president of the college made the same recommendation to the college's board of trustees and, by letter dated June 30, 1983, the president notified the plaintiff that the board of trustees had voted to deny him tenure. On June 3, 1983, according to the arbitrator's report, no relevant part of which is contradicted on the record, the plaintiff's attorney wrote to Dr. John F. Nevins, who was vice president for academic affairs of the college and was a member of the special committee on tenure. By that letter, the attorney objected to the tenure meeting of May 19, and stated, "Kindly report this matter to your attorneys as soon as possible. Unless a proper Tenure Meeting is offered, I will start suit on or about Wednesday, June 15, 1983." Nevins did not consider the letter as initiating the grievance procedure provided by the collective bargaining agreement, and therefore Nevins "did not attempt to arrange for a step one meeting."

According to the arbitrator's report, the plaintiff's attorney also wrote to Nevins and the Westfield State College president on June 28, 1983, expressing his desire to proceed to step two of the grievance procedure. Neither letter elicited a response, so, on July 11, the plaintiff's attorney wrote to the chancellor of the board giving notice of intent to proceed to step three of the grievance procedure. After a second letter to the chancellor, the chancellor responded on July 26, stating that there was no grievance properly before him and that he would take no further action. Thereafter the MTA gave "Notice to Proceed to Arbitration" to the chancellor.

The arbitrator concluded that there was no arbitrable dispute before him. He reasoned that "[t]he parties [had] negotiated a comprehensive grievance procedure going far beyond the commonplace requirements found in most labor contracts," and that, in accordance with express provision in the contract, failure to comply with that procedure constituted a waiver of the right to seek resolution of a grievance under the contract. The arbitrator reasoned that the June 3, 1983, letter written by the plaintiff's attorney to Nevins "threatened suit and, by implication, that the contractual grievance procedure was not being utilized," and that the letter of June 28 did not correct that implication. "The fact is," the arbitrator said, "[the plaintiff] never did initiate a grievance at step 1 and by not doing so precluded the opportunity for a step 1 meeting and resolution of the grievance or claim. There is, then, no proper or timely grievance before me."

The MTA notified the plaintiff that it would not appeal the arbitrator's decision. The plaintiff then filed a complaint in the Superior Court first against the board only and then, by amendment, against the MTA as well seeking to vacate the arbitrator's award. After a second amendment to the complaint, the MTA moved for summary judgment and the board moved to dismiss. A judge treated both motions as motions for summary judgment, and ordered judgment for the defendants based at least in part on the plaintiff's lack of standing under G. L. c. 150C, § 11 (1988 ed.), to seek vacation of the arbitrator's award. The plaintiff appealed to the Appeals Court. We transferred the appeal to this court on our own initiative. We affirm.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). "The party moving for summary judgment assumes the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial." *Pederson* v. *Time, Inc.*, 404 Mass. 14,

17 (1989). *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 371, cert. denied sub nom. *Bailey* v. *Bellotti,* 459 U.S. 970 (1982). "Accordingly, we look at the materials available to the judge for summary judgment purposes [including the arbitrator's report] in the light most favorable to the plaintiff to see whether, as a matter of law, they support [the plaintiff's claim]." *Yakubowicz* v. *Paramount Pictures Corp.,* 404 Mass. 624, 626 (1989). We conclude that they do not.

General Laws c. 150C (1988 ed.), entitled "Collective Bargaining Agreements to Arbitrate," provides in the relevant portion of § 11 as follows: "(*a*) Upon application of a party, the superior court shall vacate an award if: (1) the award was procured by corruption, fraud or other undue means . . . ."

The plaintiff's argument is that, because the arbitrator, who had been selected pursuant to the collective bargaining agreement between the board and the MTA, was employed by the University of Massachusetts as a professor and as director of the labor relations center, and was also a member of the MTA, his participation in the arbitration represented a conflict of interest in violation of G. L. c. 268A, § 4 (1988 ed.). As a result of that conflict, the argument proceeds, the arbitrator's decision of nonarbitrability of the plaintiff's grievance was an "award . . . procured by . . . undue means," and, as such, "[u]pon application of a party, the superior court [must] vacate [it]."

In view of our holding in this case, it is unnecessary for us to consider in detail the violations of G. L. c. 268A, § 4, which the plaintiff asserts amount to conflicts of interest entitling the plaintiff to relief. It is enough that we identify the sections said to have been violated and that we briefly describe the alleged violations. Section 4 (*a*) provides: "No state employee shall otherwise than as provided by law for the proper discharge of his official duties, directly or indirectly receive or request compensation from anyone other than the commonwealth or a state agency, in relation to any particular matter in which the commonwealth or a state agency is a party or has a direct or substantial interest." The plaintiff contends that the arbitrator's violation of § 4 (*a*) is provided by the uncontested

fact that the arbitrator received reimbursement of his expenses and payment of his professional fee by the board and the MTA in equal parts.

Chapter 268A, § 4 (*c*), provides in part: "No state employee shall, otherwise than in the proper discharge of his official duties, act . . . as agent or attorney for anyone in connection with any particular matter in which the commonwealth or a state agency is a party or has a direct and substantial interest." The plaintiff argues that the arbitrator, paid by the board and the MTA, acted as agent for both in violation of § 4 (*c*). In addition, the plaintiff says, the arbitrator's employment by the Commonwealth as professor and labor relations center director combined with his role as arbitrator for a fee establishes a conflict of interest under c. 268A, § 7 (1988 ed.). That section provides: "A state employee who has a financial interest, directly or indirectly, in a contract made by a state agency, in which the commonwealth or a state agency is an interested party, of which interest he has knowledge or reason to know, shall be punished . . . ." Citing *Quinn* v. *State Ethics Comm'n*, 401 Mass. 210 (1987), the plaintiff says that the arbitrator, a State employee as professor and labor relations center director, had a financial interest in the contract of his employment as arbitrator by the board, a State agency, in violation of § 7.

We need not decide whether G. L. c. 268A, § 4 or § 7, was violated in this case because, even if there were such violations, the plaintiff does not contend that he is entitled to a setting aside of the arbitrator's award without his qualifying as "a party" entitled by G. L. c. 150C, § 11, to apply for that remedy. The amended complaint describes this action as having been "filed pursuant to Massachusetts General Laws, Chapter 150C, Section 11 as an application to vacate the award of an Arbitrator." The plaintiff states in his brief that "standing as a party under General Laws Chapter 150C, Section 11 provides [the plaintiff] with his only remedy against the Board, his only opportunity to receive the benefit of the [collective bargaining agreement], and his only opportunity to challenge the status of the arbitrator." The critical question, then, is whether the plaintiff, who was not a party to the collective bargaining

agreement, nevertheless is a "party" within the meaning of that word in c. 150C, § 11.

The word "party" is not defined in c. 150C. As its title suggests, c. 150C regulates collective bargaining agreements to arbitrate. Section 1 of c. 150C provides: "A written agreement or a provision in a written agreement between a labor organization or organizations . . . and an employer or employers or association or group of employers to submit to arbitration any existing controversy or any controversy thereafter arising between parties to the agreement . . . shall be valid, enforceable and irrevocable, except as otherwise provided by law or in equity for the revocation of any contract." It is clear from the language of § 1 that the word "party," as used throughout the chapter, refers to the parties to a collective bargaining agreement, that is, to a labor organization or organizations and an employer or employers. *Clegg* v. *School Comm. of Boston*, 368 Mass. 807 (1975), and *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184 (1984), relied on by the plaintiff, are not helpful. In neither case was the issue of the plaintiffs' standing raised or adjudicated. We agree with the judge below, therefore, that the plaintiff lacked standing to bring this action. Summary judgment for the defendants was proper.

We make one final comment with respect to the plaintiff's assertion, referred to above, that, unless he is deemed a party entitled by c. 150C, § 11, to seek a court order vacating the arbitrator's decision, he has no available relief. As we have said, we agree with the plaintiff that the result of our nonrecognition of him as a party is that he is not entitled to relief in this action. We observe, however, that, if he was dissatisfied with the MTA's refusal to seek judicial review of the arbitrator's award, he was entitled to present a claim to the Labor Relations Commission under G. L. c. 150E, § 11 (1988 ed.), that the MTA violated its duty to represent him fairly. See *Leahy* v. *Local 1526, Am. Fed'n of State, County & Mun. Employees*, 399 Mass. 341, 347-348 (1987).

*Judgment affirmed.*